

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00138-CV

---

RAMA STEVEN DOUGLAS, APPELLANT

V.

MARLINDY LOUISE DOUGLAS, APPELLEE

---

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-732725-23, Honorable Lori L. Deangelis, Presiding

---

January 21, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Rama Steven Douglas, appeals from the trial court's *Final Decree of Divorce* in which Appellee, Marlindy Louise Douglas, was awarded spousal maintenance. By a sole issue, he maintains the trial court abused its discretion in ordering him to pay Marlindy $3,500 per month until July 31, 2027. We reverse the award of spousal maintenance and render Marlindy take nothing on her claim.

This cause was originally filed in the Second Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001. In resolving Rama's issue, we are required to apply the transferor court's case law. TEX. R. APP. P. 41.3. Our decision to reverse the award of spousal maintenance rests on a factually similar case decided by the Second Court of Appeals. *See McCreary v. McCreary*, No. 02-23-00187-CV, 2024 Tex. App. LEXIS 6152, at *10–11 (Tex. App.—Fort Worth Aug. 22, 2024, no pet.) (holding the evidence was legally insufficient to support an implied finding the spouse lacked the ability to earn sufficient income to provide for her minimum reasonable needs).

**BACKGROUND**

The parties married in January 2013 and have three young children. Rama is an attorney licensed in California and New York, and at the time of the final divorce hearing was in the process of becoming licensed in Tennessee. Most of the time he worked remotely. The parties previously resided in California but purchased a home in Texas in 2022. Rama's mother also lived in the marital home.

Marlindy has a master's degree in education and briefly worked as a teacher in Texas before becoming a stay-at-home mother. In April 2023, Marlindy was arrested for allegedly assaulting Rama and his mother. The charges against her were "no-billed" and Rama filed for a protective order.

Rama filed for divorce shortly after the assault incident and rented an expensive home near the family residence. Marlindy counter-petitioned for divorce and requested post-divorce maintenance for a reasonable period of time. She testified she was unable

2

to find employment as a teacher due to her arrest and a related CPS case. She took a job with a laundry company and was making $400 per month. Rama also struggled financially due to a three-month unpaid leave of absence from his law firm and lavish expenditures. The utilities in the family home were shut off for non-payment and the couple became delinquent on numerous financial obligations. They had little to no equity in the marital home and did not own any real property. Family members provided financial assistance to help them settle outstanding accounts with utilities and other debts.

At the conclusion of the testimony, the trial court announced it intended to order spousal maintenance for Marlindy but acknowledged it was not responsible for knowing "how much you're wanting in spousal support" and requested her to "put together some numbers" and submit them. Marlindy timely submitted her request for spousal maintenance and asserted her eligibility under section 8.051(2)(B) of the Family Code which requires a spouse to be married for ten years and an inability to earn sufficient income to provide for her minimum reasonable needs. She asserted that despite diligently looking for employment, she was unable to find a job that would pay enough to meet her minimum reasonable needs because she could not pass a background check due to her arrest. Marlindy declared there were no assets to divide, and the parties had a large amount of debt attributable mostly to Rama. She claimed Rama's income at the time of divorce was $268,000. Marlindy was working at a laundromat for $400 a month. Due to the disparity in income, she requested $5000 per month for the maximum period allowed of five years.

3

Rama responded that Marlindy did not present evidence of her minimum reasonable needs nor any evidence of the amount requested. But he did request the trial court limit the award to the shortest reasonable period not to exceed one year.

The divorce decree ordered Rama to pay the maximum in child support per the statutory guidelines. Marlindy was not awarded any real property. She sought spousal support in the amount of $5,000 per month for five years but was awarded $3,500 per month for thirty-six months or earlier under certain circumstances.[1]

Rama's counsel drafted the final decree and two motions requesting the trial court to sign the decree. After the final decree was entered, Rama did not file a motion for new trial or request findings of fact or conclusions of law.

## STANDARD OF REVIEW

A decision to award spousal maintenance is reviewed for abuse of discretion. *Mehta v. Mehta*, 716 S.W.3d 126, 131 (Tex. 2025) (citations omitted). In family law cases, the abuse of discretion standard overlaps with the traditional sufficiency standards of review and are relevant factors in assessing whether a trial court abused its discretion. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). In our review, we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion and (2) did the trial court err in its application of that discretion? *Id.* Where, as here, no findings of fact or conclusions of law were requested, the trial court is presumed to have made all findings necessary to support its judgment

---

[1] Before the final decree was entered, Rama filed a *Suggestion of Bankruptcy* which was completed four months later. Rama then filed a motion for the trial court to sign the decree which included the language for post-divorce spousal maintenance.

and it must be upheld on any legal theory supported by the record. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 546 (Tex. 2018) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

**APPLICABLE LAW**

Section 8.051 of the Family Code authorizes a trial court to order maintenance for a spouse under enumerated circumstances. Such an award is authorized only in "very narrow" and "very limited circumstances." *Dalton v. Dalton*, 551 S.W.3d 126, 130 (Tex. 2018). An award to an eligible spouse must provide the duration and amount of which must not exceed specified limits and must automatically terminate upon certain events. § 8.052.

The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability to support oneself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *Sherman v. Sherman*, 650 S.W.3d 897, 899 (Tex. App.—Fort Worth 2022, no pet.). A spouse seeking maintenance bears the burden of proving the claim. *Wegand v. Wegand*, No. 02-23-00353-CV, 2024 Tex. App. LEXIS 5537, at *12 (Tex. App.—Fort Worth Aug. 1, 2024, no pet.) (mem. op.). There is a rebuttable presumption that maintenance is not warranted unless the spouse seeking maintenance has exercised due diligence in (1) earning sufficient income to meet minimum reasonable needs or (2) developing necessary skills to meet minimum reasonable needs during a period of separation and while suit for divorce is pending. § 8.053.

ANALYSIS

Rama maintains the trial court abused its discretion in awarding Marlindy spousal maintenance. He asserts the evidence is legally insufficient to support the trial court's implied finding that Marlindy lacked the ability to earn sufficient income to meet her minimum reasonable needs or that she overcame the presumption that spousal support is not warranted because she failed to exercise due diligence. We agree.

Marlindy sought spousal support under section 8.051(2)(B) of the Family Code which required her to show the parties had been married at least ten years and she lacked the ability to earn sufficient income to provide for her minimum reasonable needs. TEX. FAM. CODE § 8.051(2)(B). It is undisputed the parties were married for ten years. At the time of separation, Marlindy was working sporadically as a substitute teacher.

As previously noted, section 8.053 creates a presumption against spousal maintenance. To qualify for spousal maintenance under section 8.051(2)(B), Marlindy was required to rebut the presumption in section 8.053 that maintenance is not warranted unless she exercised due diligence in earning sufficient income to provide for her minimum reasonable needs. § 8.053(a)(1). "Minimum reasonable needs" is not defined but trial courts generally have discretion to determine needs on a case-by-case, fact-specific basis. *Mehta*, 716 S.W.3d at 132. An itemized list of monthly income and expenses is "helpful" but not required, and neither the Family Code nor case law require exactitude. *Id.*

Marlindy testified she is trained in teaching kindergarten through fifth grade. For the brief period she was employed as a teacher, she made $30,000 annually. She

6

claimed she was unable to find employment as a teacher because her arrest record kept her from passing a background check.

During her testimony, Marlindy requested to relocate to California with her children where she had family in the Los Angeles area and better opportunities for employment in education.[2]  She testified that although her arrest would also be an impediment to employment in the education field in California, she had a cousin who worked in a public school district.  When asked if her cousin could overcome the impediment, she said she "misspoke."  She did not present any evidence that she had the proper credentials for employment in education in California.

As relevant here, the test under section 8.053 is whether Marlindy exercised due diligence in earning sufficient income to meet her minimal reasonable needs and not whether she could find employment.  It is undisputed that Marlindy is highly educated. She did not provide a copy of her resume or any documentation of job applications or rejections except for a homeschool teaching job in California.  She claimed that since the Spring of 2023, she had applied for teaching jobs as well as jobs in the grocery business, bookstores, pet sitting dog walking, and customer service.  But she did not provide any details on the jobs or names of companies.  Despite her testimony that she worked as a substitute teacher when she and Rama separated, which was after the alleged assault on her mother-in-law, she did not present any evidence she sought employment as a substitute teacher or was denied an opportunity to substitute.

---

[2] Marlindy acknowledged the cost of living in California is more than in Texas.

Regarding educational employment, Marlindy testified she could not pass a background check. That argument was rejected by the transferor court in *McCreary*, 2024 Tex. App. LEXIS 6152, at *16. The spouse in *McCreary* was a certified teacher with a Class A misdemeanor conviction and a pending felony charge who claimed she could not find a teaching job because she could not pass a background check. The Fort Worth Court noted her criminal history did not automatically disqualify her from teaching. *Id.* There was no evidence she lost her certification to teach. *Id.* Referencing section 21.058(a)–(b) of the Texas Education Code, the Court observed only certain felony convictions required revocation of a teaching certificate. *Id.* The Fort Worth Court found the evidence legally insufficient to support the trial court's implied finding that the spouse lacked the ability to earn sufficient income to meet her minimum reasonable needs. *See id.* at *17. *See also Wegand*, 2024 Tex. App. LEXIS 5537, at *12 (reversing award of spousal maintenance for a college-educated spouse with a pending criminal charge because she did not offer any evidence of efforts to secure higher-paying employment). *Cf. Mehta*, 716 S.W.3d at 129 (reversing Fort Worth Court's finding of legally insufficient evidence and reinstating the award of spousal support because Court erred in considering only incomplete quantitative evidence of spouse's expenses to the exclusion of other evidence that established she lacked sufficient property to meet her minimum reasonable needs and failing to consider children's expenses while including child support payments). Marlindy did not present any evidence regarding expenses for the children not covered by Rama's obligations in the divorce decree.

Unlike in *McCreary*, Marlindy did not have a criminal conviction on her record—her charges were no-billed. There was no evidence Marlindy lost her certification to teach.

8

She claimed she could not pass a background check in the education field, yet she applied for a teaching position in California. Instead of seeking employment as a substitute teacher in Texas, a position she had already worked in, she took a job at a laundry business for $400 per month.

To support her claim for spousal maintenance, Marlindy also claims Rama "unconditionally requested" she receive spousal maintenance based on the following testimony when questioned by his own attorney:

Q. And you're of the opinion that you would rather the Court award her spousal maintenance or more spousal maintenance for her to be able to remain in Texas?

A. Yes.

Q. Do you believe that she needs a little help to get started again.

A. Yes.

Her excerpt is taken out of context. Rama was not opposed to paying spousal maintenance because he did not want his children to move to California. He testified he was not aware of any information she had provided about her specific needs. He confirmed Marlindy is a hard worker and answered affirmatively when asked if she was educationally qualified to get a job. He did not see any hurdles for her to secure employment outside the field of education in Texas.

Marlindy provided the court with a list of her income and expenses. She listed her monthly income as $1,843.48, which included child support of $1,500[3] per month plus her

---

[3] $1,500 of child support per month was initially set by temporary orders. After a final hearing, Rama was ordered to pay maximum child support of $2,760 per month in the divorce decree and he does not challenge that amount.

monthly net pay from her laundry job of $343.48.  As an expense, Marlindy included a monthly mortgage payment of $6,480.87 but the divorce decree awarded the marital residence to Rama with the responsibility of paying the mortgage.  Marlindy was ordered to vacate the residence by August 10, 2024.  Her inclusion of the mortgage payment in her financial statement inflated her expenses by over $6,400.

Marlindy also included a student loan payment of $1,804.86 in her monthly expenses.  She testified, however, there are no current payments because the loan is in official deferment.  The only other expenses included are a car loan payment of $311.84, an internet expense of $70, and approximately $1,600 in "food, clothing, and personal" expenses.

At the conclusion of the hearing, the trial court observed as follows:

I'm not really sure that I ever heard anybody say how much in post-divorce maintenance you're asking for.  So, it's difficult for me to put together anything that helps you in that regard.

After announcing a move to California was "not in [Marlindy's] future," the trial court continued as follows:

He's not paying for your stuff anymore.  He's going to be paying child support at the cap which is 27-somethin, and he's going to be paying spousal support.  But you're asking me to make up how much you're wanting in spousal support, and I don't think it's my job to do that.

The trial court then asked Marlindy to "[p]ut together some numbers."

The evidence does not support Marlindy's exercise of due diligence to show she lacked an ability to earn sufficient income to meet her minimum reasonable needs.  She failed to meet her burden.  Because the trial court did not have sufficient evidence on

10

which to exercise its discretion, it erred in applying its discretion and awarding Marlindy $3,500 per month in spousal maintenance. Rama's sole issue is sustained.

## CONCLUSION

We reverse the award of spousal maintenance in the *Final Decree of Divorce* and render that Marlindy take-nothing on her claim for spousal maintenance. The remainder of the *Final Decree of Divorce* is affirmed. *See Wegand*, 2024 Tex. App. LEXIS 5537, at *14.

Alex Yarbrough
Justice

11